**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

BODY & MIND ACUPUNCTURE,
d/b/a BODY & MIND ACUPUNCTURE
& WELLNESS CENTER, a West
Virginia corporation,

        **Plaintiff,**

v.                   **//   CIVIL ACTION NO. 1:16CV211
                           (Judge Keeley)**

HUMANA HEALTH PLAN, INC.,
a foreign corporation,

        **Defendant.**

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFF'S MOTION TO REMAND [DKT. NO. 9]**

On September 29, 2016, the plaintiff, Body & Mind Acupuncture,
Inc. ("Body & Mind"), filed a complaint against the defendant,
Humana Health Plan, Inc. ("Humana"), in the Circuit Court of
Monongalia County, West Virginia (Dkt. No. 1-2). Humana timely
removed the case to this Court on November 3, 2016, citing 28
U.S.C. § 1442(a)(1), the Federal Officer Removal Statute (Dkt. No.
1). On December 2, 2016, Body & Mind moved to remand the case (Dkt.
No. 9). After full briefing, the Court heard argument on the motion
at a scheduling conference on January 30, 2017 (Dkt. No. 13), and
for the reasons that follow **DENIED** the motion (Dkt. No. 9).

## I. BACKGROUND

Body & Mind is a healthcare provider that offers acupuncture
treatment in Monongalia County, West Virginia. It is a
participating provider for coverage provided by Humana, a Medicare

Advantage organization ("MAO") for West Virginia's Public Employees Insurance Agency (Dkt. No. 1-2 at 1). The dispute in this case is based on certain billing codes that Body & Mind used on claims forms submitted to Humana. <u>Id.</u> at 2.

The complaint alleges that, on March 2, 2016, Humana informed Body & Mind that it had been using an erroneous "primary procedure code," resulting in its receipt of improper payments from Humana. More particularly, Humana allegedly claimed that Body & Mind had used an "add on code" without using the prerequisite "primary procedure code." Body & Mind claims that it used the proper codes assigned by the federal Centers for Medicare and Medicaid Services ("CMS") when it billed for "acupuncture w/o stimulation 15 minutes" and "acupuncture w/o stimulation additional 15 minutes." Body & Mind informed Humana of its perceived error and also requested that Humana explain its contentions or identify the proper primary procedure code. At the time Body & Mind filed its complaint, however, Humana had not responded to those inquiries. <u>Id.</u> at 2. The complaint further alleges that, in order to recoup the supposedly improper overpayments, Humana began withholding payments to Body & Mind on unrelated claims. <u>Id.</u> at 3.

Body & Mind seeks a declaration that Humana has not overpaid Body & Mind, and thus has no basis for recouping service fees. It

**MEMORANDUM OPINION AND ORDER DENYING**
**PLAINTIFF'S MOTION TO REMAND [DKT. NO. 9]**

also seeks an injunction preventing Humana from recouping any alleged overpayment. Id. Finally, Body & Mind makes the following claims for relief under West Virginia law: conversion, breach of implied contract and course of dealing, and unjust enrichment. Id. at 4-5. As monetary damages, Body & Mind claims that Humana has wrongfully withheld $1,604.58 and has threatened to recoup payment exceeding $6,000, to which Body & Mind claims an entitlement. Id. at 5.

## II. APPLICABLE LAW

### A.    Federal Officer Removal

Under 28 U.S.C. § 1442(a)(1), a civil action commenced in state court can be removed to the district court if it is against

> [t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office . . . .

In other words, a defendant may remove if it establishes that "(1) it is a federal officer or a person acting under that officer; (2) a colorable federal defense; and (3) the suit is for a[n] act under color of office, which requires a causal nexus between the charged conduct and asserted official authority." Ripley v. Foster Wheeler LLC, 841 F.3d 207, 209-10 (4th Cir. 2016) (quoting Jefferson Cty.,

**MEMORANDUM OPINION AND ORDER DENYING**
**PLAINTIFF'S MOTION TO REMAND [DKT. NO. 9]**

Ala. v. Acker, 527 U.S. 423, 431 (1999))(internal citation and
quotation omitted). This rule operates as an exception to the well-
pleaded complaint rule, which usually prevents removal on the basis
of a federal defense. Id. at 210; see also Mesa v. California,
489 U.S. 121, 136-37 (1989).

Typically, federalism counsels that removal jurisdiction
should be strictly construed. Palisades Collections LLC v. Shorts,
552 F.3d 327, 334 (4th Cir. 2008) (citing Md. Stadium Auth. v.
Ellerbe Becket Inc., 407 F.3d 255, 260 (4th Cir. 2005)). The
Supreme Court has made clear, however, that the usual presumption
against removal does not apply to § 1442(a)(1); rather, such
removal jurisdiction must be liberally construed. Watson v. Phillip
Morris Cos., Inc., 551 U.S. 142, 147 (2007). Nonetheless, "[t]he
burden of establishing federal jurisdiction is placed upon the
party seeking the removal." Mulcahey v. Columbia Organic Chems.,
Inc., 29 F.3d 148, 151 (4th Cir. 1994). The Court may only consider
the facts on the record at the time of removal. See Lowrey v. Ala.
Power Co., 483 F.3d 1184, 1213-15 (11th Cir. 2007).

**B.    Medicare Program**

The Medicare Act (the "Act"), 42 U.S.C. § 1395 et seq.,
established a federally subsidized health insurance program to be

4

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFF'S MOTION TO REMAND [DKT. NO. 9]**

administered by the Secretary of Health and Human Services
("Secretary"). Heckler v. Ringer, 466 U.S. 602, 605 (1984). In
turn, the Secretary delegated to CMS the responsibility for
administering Medicare.

Part A of the Act provides insurance for hospital and post-
hospital costs, while Part B establishes a voluntary program that
includes coverage for expenses not covered by Part A, "such as
reasonable charges for physicians' services, medical supplies, and
laboratory tests." Req'l Med. Transp., Inc. v. Highmark, Inc.,
541 F. Supp. 2d 718, 723-24 (E.D. Pa. 2008) (citing 42 U.S.C.
§§ 1395j-1395w-4). Part B is administered "through contracts with
medicare administrative contractors," 42 U.S.C. § 1395u(a), which
"act on behalf of CMS in carrying out certain administrative
responsibilities that the law imposes" and are indemnified by CMS
for those actions. 42 C.F.R. § 421.5.[1]

---

[1] "Under the Medicare Act, a 'carrier' is a private insurance
company that contracts with the Department of Health and Human
Services to administer claims submitted under the Medicare Part B
program, while a 'fiscal intermediary' is a private insurance
company that contracts with the Department of Health and Human
Services to administer major medical claims under the Medicare Part
A program. Fiscal intermediaries and carriers perform comparable
roles." United States ex rel Rahman v. Oncology Assocs., P.C.,
198 F.3d 502, 512 n.2 (4th Cir. 1999).

## MEMORANDUM OPINION AND ORDER DENYING
## PLAINTIFF'S MOTION TO REMAND [DKT. NO. 9]

Part C, also known as Medicare Advantage ("MA"), was enacted in 1997. It provides an alternative program by which individuals can receive Medicare benefits through a variety of private plans rather than Parts A and B. Congress hoped that this "would ultimately create a more efficient and less expensive Medicare system." In re Avandia Mktg., Sales Practices & Prods. Liab. Litig., 685 F.3d 353, 363 (3d Cir. 2012). In order to administer plans under Part C, private companies, referred to as Medicare Advantage organizations ("MAO"), contract with CMS. 42 U.S.C. § 1395w-27. A contracting MAO receives a set monthly payment for each individual to whom it provides Part C coverage and "assume[s] full financial risk" should an individual's costs exceed that amount. 42 U.S.C. §§ 1395w-23, 1395w-25. MAOs are subject to extensive regulation, 42 C.F.R. §§ 422.1-422.2615, but their contract with CMS gives them autonomy to take advantage of the private market by designing plans, choosing providers, and setting costs. Ohio State Chiropractic Ass'n v. Humana Health Plan Inc., 647 Fed. App'x 619, 623 (6th Cir. 2016). The regulations that MAOs must follow include ones that govern their relationship with providers. 42 C.F.R. §§ 422.200-422.224.

**MEMORANDUM OPINION AND ORDER DENYING**
**PLAINTIFF'S MOTION TO REMAND [DKT. NO. 9]**

### III. DISCUSSION

In support of its motion to remand, Body & Mind argues that Humana's removal is doomed "because it cannot demonstrate that it acted under the direction of a federal officer, and the necessary causal nexus" (Dkt. No. 9-1 at 3). After reviewing the parties' arguments and considering Humana's role as an MAO administering Part C coverage under the Act, the Court concludes that Humana is entitled to take advantage of the Federal Officer Removal Statute in this case. 28 U.S.C. § 1442(a)(1).

**A.  Person**

Body & Mind acknowledges that Humana, although a corporation, is a "person" within the meaning of § 1442(a)(1) (Dkt. No. 9-1 at 3). Indeed, "in determining the meaning of any Act of Congress, unless the context indicates otherwise . . . the words 'person' and 'whoever' include corporations." 1 U.S.C. § 1. Courts routinely have held that corporations are entitled to take advantage of § 1442(a)(1) because they satisfy its "person" requirement. See, e.g., Highmark, Inc., 541 F. Supp. 2d at 723-24 ("[T]he overwhelming majority of federal courts have held that corporations qualify as persons under the federal officer removal statute."); Pack v. AC and S, Inc., 838 F. Supp. 1099, 1102-03 (D. Md. 1993)

(giving a broad construction to the term "person" under § 1442).

Therefore, the Court finds that Humana is a "person" that may seek

to establish removal jurisdiction under § 1442(a)(1).

**B.    Colorable Federal Defense**

Body & Mind also does not contest that Humana has asserted a

"colorable federal defense," a key requirement of § 1442(a)(1).

Ripley, 841 F.3d at 209-10. "The defendant need not prove that he

will actually prevail on his federal immunity defense in order to

obtain removal." Jamison v. Wiley, 14 F.3d 222, 238 (4th Cir.

1994). Rather, the statute is meant to "cover all cases where

federal officers can raise a colorable defense arising out of their

duty to enforce federal law." Mesa v. California, 489 U.S. 121, 133

(1989) (quoting Willingham v. Morgan, 395 U.S. 402, 406-07 (1969).

Indeed, "'[o]ne of the primary purposes' of federal officer removal

is to provide a federal forum for a federal defense." Ripley,

841 F.3d at 210 (quoting Willingham, 395 U.S. at 407).

Here, in its notice of removal, Humana asserted two federal

defenses: 1) exhaustion of administrative remedies and 2)

preemption under the Act (Dkt. No. 1 at 7-9). Exhaustion and

preemption are federal defenses that meet the requirement of

§ 1442(a)(1) if they are, in fact, colorable under the facts of the

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFF'S MOTION TO REMAND [DKT. NO. 9]**

case. <u>See, e.g.</u>, <u>Watson v. Philip Morris Cos., Inc., a Corp.</u>,
420 F.3d 852, 862-63 (8th Cir. 2005), <u>rev'd on other grounds</u>, 551
U.S. 142 (2007) (preemption); <u>Mann v. Reeder</u>, No. 1:10-CV-00133-
JHM, 2010 WL 5341934 (W.D. Ky. 2010) (preemption and exhaustion);
<u>Highmark, Inc.</u>, 541 F. Supp. 2d at 725 (exhaustion).

Humana asserts that because its claims "arise under" the
Medicare Act, Body & Mind must first exhaust its administrative
remedies through CMS before seeking judicial review (Dkt. No. 1 at
7). "[E]xhaustion of administrative remedies is required for all
claims arising under the Medicare Act." <u>Buckner v. Heckler</u>,
804 F.2d 258, 259 (4th Cir. 1986). In order to arise under the
Medicare Act, a claim either must be "inextricably intertwined"
with a claim for benefits or "furnish[] both the standing and
substantive basis for the presentation of the claim." <u>Id.</u> (quoting
<u>Ringer</u>, 466 U.S. at 615) (internal quotation omitted).

At the very least, the regulations permit a provider[2] to seek
an organization determination of certain payment decisions, 42
C.F.R. § 422.566(b)-(c), which may then be reviewed through the
administrative process. 42 C.F.R. §§ 422.578, 422.600, 422.608.

---

[2] A "provider" is any individual or entity that is "engaged in
the delivery of health care services in a State and is licensed or
certified." 42 C.F.R. § 422.2.

Courts, however, are split concerning whether providers, rather than enrollees, are required to exhaust administrative remedies under Part C. Compare Ohio State Chiropractic, 647 Fed. App'x 619 (questioning whether a provider must exhaust administrative remedies concerning "private billing dispute[s]"); RenCare, Ltd. v. Humana Health Plan of Texas, 395 F.3d 555 (5th Cir. 2004) (holding that a provider's claims for reimbursement did not "arise under" Medicare); with Assocs. Rehab. Recovery, Inc. v. Humana Med. Plan, Inc., 76 F. Supp. 3d 1388, 1392 (S.D. Fla. 2014) ("[T]he way in which claims for benefits are resolved will have a financial impact on the government and enrollees."); Prime Healthcare Huntington Beach, LLC v. SCAN Health Plan, Nos. SACV 16-01226-DFM, SACV 16-01247-DFM, SACV 16-01284-DFM, 2016 WL 5745130 (C.D. Cal. Sept. 27, 2016) (concluding that a non-participating provider had to exhaust administrative remedies for "claims aim[ed] directly at reimbursement for alleged shortfalls for Medicare benefits"); see also Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc., 694 F.3d 340, 347-49 (3d Cir. 2012) (holding that a claim that the defendant "improperly withheld payments to offset purported overpayments" was "inextricably intertwined" with a claim for benefits).

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFF'S MOTION TO REMAND [DKT. NO. 9]**

The Fourth Circuit has not decided whether Body & Mind's particular claims "aris[e] under" the Medicare Act, and thus must be administratively exhausted. The Court, however, need not decide whether Humana's exhaustion defense will ultimately prove successful, as one of the main purposes of § 1442(a)(1) is to provide a federal forum for federal defendants to assert federal defenses. Ripley, 841 F.3d at 210. Here, Humana has identified a sufficiently colorable federal defense.[3]

**C.    "Acting Under" and "Causal Nexus"**

Body & Mind argues that Humana cannot satisfy the remaining requirements of § 1442(a)(1), that it was "acting under" a federal officer and that there is a "causal nexus" between its official action and the injury alleged (Dkt. No. 9-1 at 3). Although the Fourth Circuit has articulated these requirements as distinct elements, see Ripley, 841 F.3d at 209-10, they tend to merge into a single inquiry: that is, whether "the acts that form the basis for the state . . . suit were performed pursuant to an officer's

---

[3] Because Humana has established that Body & Mind's failure to exhaust administrative remedies is a colorable federal defense, the Court need not reach the question of whether Humana's preemption defense is likewise colorable. The Court notes, however, that in support of the defense, Humana cited only one case from the Ninth Circuit that dealt with Medicare Part D and state law claims not at issue here. See Do Sung Uhm v. Humana, Inc., 620 F.3d 1134 (9th Cir. 2010).

direct orders or to comprehensive and detailed regulations." <u>In re</u>
<u>Methyl Tertiary Butyl Ether Prods. Liab. Litig.</u>, 488 F.3d 112, 124
(2d Cir. 2007) (quoting <u>Ryan v. Dow Chem. Co.</u>, 781 F. Supp. 934,
946 (E.D.N.Y. 1992)). It is clear in this case that Humana
satisfies both of these requirements.

**1.   Acting Under**

The Supreme Court has noted that "acting under" is a broad
phrase that must be "liberally construed." <u>Watson</u>, 551 U.S. at 147.
"[T]he broad language of § 1442(a)(1) must be applied in a manner
that effectuates the central congressional policy of securing a
federal forum for persons who assist the federal government in a
manner that risks the imposition of state law liability."
<u>Stephenson v. Nassif</u>, 120 F. Supp. 3d 884, 888 (E.D. Va. 2015).
Thus, a private person is "acting under" a federal superior if the
person is under "subjection, guidance, or control" and makes "an
effort to <u>assist</u>, or to help <u>carry out</u>, the duties or tasks of the
federal superior." <u>Watson</u>, 551 U.S. at 152; <u>see also</u> <u>Carter v.</u>
<u>Monsanto Co.</u>, 635 F. Supp. 2d 479, 488 (S.D.W. Va. 2009) (quoting
<u>Pack</u>, 838 F. Supp. at 1103) ("[A] defendant acts under the control
of a federal officer if the federal officer has 'direct and
detailed control' over the activity."). The classification does not

extend to highly regulated companies that simply comply with the
law, even complex regulatory orders, <u>Watson</u>, 551 U.S. at 152, nor
to acts taken "under the general auspices of federal direction."
<u>Good v. Armstrong World Indus., Inc.</u>, 914 F. Supp. 1125, 1128 (E.D.
Pa. 1996).

    In <u>Watson</u>, the Supreme Court considered "whether the fact that
a federal regulatory agency directs, supervises, and monitors a
company's activities in considerable detail brings that company
within the scope" of the federal officer removal statute. 551 U.S.
at 145. There, the plaintiffs had sued Phillip Morris in Arkansas
state court, alleging that it had engaged in deceptive business
practices in labeling its "light" cigarettes. The Supreme Court
unequivocally held that "a highly regulated firm cannot find a
statutory basis for removal in the fact of federal regulation
alone." <u>Id.</u> at 153. Compliance with federal law does not fall
within the "acting under" requirement. <u>Id.</u> Rather, a private person
must "assist" or "help carry out" federal duties to take advantage
of the statute. <u>Id.</u> at 152. The Court also noted that a government
contractor might qualify for removal when its relationship with the
government is "an unusually close one involving detailed
regulation, monitoring, or supervision." In that circumstance, the
contractors either provide something that the Government needs or

provide a service it "would have had to perform." Id. at 153-54
(referencing a case where Dow Chemical provided Agent Orange to the
Government).

Following Watson, courts around the country have considered
whether private insurers under Parts C and D fit into the "private
contractor" category contemplated by the Supreme Court. A number of
district courts have held that they do. See, e.g., Beaumont Foot
Specialists, Inc. v. United Healthcare of Tex., Inc., No. 1:15-cv-
216, 2015 WL 9257026, at *4 (E.D. Tex. Dec. 14, 2015) (reasoning
that MAO's have been delegated authority to carry out a basic
government task and are governed by regulations that control their
payments to providers); Assocs. Rehab., 76 F. Supp. 3d at 1391;
Einhorn v. CarePlus Health Plans, Inc., 43 F. Supp. 3d 1268, 1270
(S.D. Fla. 2014); Woodruff v. Humana Pharmacy Inc., 65 F. Supp.
3d 588, 590-91 (N.D. Ill. 2014) (reasoning that "[b]ecause the
Secretary has delegated the task of administering prescription drug
benefits to PDP sponsors like Humana, Humana acts under the
authority of a federal officer. Humana is not merely complying with
federal law—such as those requiring testing of products . . . but
assisting the federal government in carrying it out."); Mann v.
Reeder, No. 1:10-CV-00133, 2010 WL 5341934, at *2 (W.D. Ky. Dec.
21, 2010) (reasoning that Humana did more than act under the

"general auspices" of a federal agency and provided assistance to CMS that was "beyond mere compliance with the law"), <u>overruled by Ohio State Chiropractic</u>, 647 Fed. App'x 619. Other courts have exercised jurisdiction over such removed cases when no motion to remand was filed. <u>Cupp v. Johns</u>, 2014 WL 916489 (W.D. Ark. Mar. 10, 2014); <u>Rudek v. Presence Our Lady of Resurrection Med. Ctr.</u>, No. 13 C 06022, 2014 WL 5441845, at *1 & n.1 (N.D. Ill. Oct. 27, 2014).

To this Court's knowledge, the Sixth Circuit is the only court of appeals to address this particular question, and it has concluded, albeit in an unpublished opinion, that MAOs are not "acting under" CMS. Unlike the lower courts, the circuit court was "not convinced that the regulation, supervision, and control to which Humana is subject connote the sort of unusually close relationship necessary for a private contractor to 'act under' a federal agency." <u>Ohio State Chiropractic</u>, 647 Fed. App'x at 624. It reasoned that MAOs are distinct from Part B carriers held to act under a federal officer.[4] While Part B insurers act on behalf of CMS and are indemnified by it, no such provision exists for MAOs, and although MAOs are "subject to extensive regulatory requirements," their plans are not closely supervised by CMS. <u>Id.</u>

---

[4] <u>Highmark, Inc.</u>, 541 F. Supp. 2d at 724 (compiling cases).

at 623. In addition, the Sixth Circuit reasoned that MAOs do not perform a task that the Government would otherwise have to perform. "If no health insurer chose to contract with CMS as an MAO, it is doubtful the government would get into the business of offering its own MA plans." Rather, it would continue to administer Medicare under Parts A and B. Id. at 623-24.

The conclusion in Ohio State Chiropractic appears inconsistent with the broad and liberal construction of "acting under" articulated by the Supreme Court in Watson. 551 U.S. at 147. More persuasive is the reasoning of the majority of lower courts that MAOs administering Part C benefits are "acting under" CMS in a manner that entitles them to removal under § 1442(a)(1).

In the first place, it is apparent that Humana helps CMS "fulfill [a] basic governmental task." Watson, 551 U.S. at 153. Pursuant to its contract with CMS, Humana administers Medicare benefits through the private market. Congress arranged this construct for the express purpose of administering government-provided Medicare benefits in a cheaper and more efficient manner. Avandia, 685 F.3d at 363. Absent MAOs such as Humana, CMS would be obligated to administer Medicare benefits through Parts A and B to

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFF'S MOTION TO REMAND [DKT. NO. 9]**

those individuals who currently elect Part C coverage.[5] Therefore, Humana's activities "involve an effort to <u>assist</u>, or to help <u>carry out</u>, the duties or tasks of the federal superior" in a manner much more significant than "simply <u>complying</u> with the law" to which it is subject. <u>Watson</u>, 551 U.S. at 153. The Court finds that this responsibility is more akin to a delegation of CMS administrative obligations than a regulation of otherwise private insurance. <u>See Jacks v. Meridian Res. Co., LLC</u>, 701 F.3d 1224, 1233 (8th Cir. 2012) (noting the Supreme Court's distinction between regulation and delegation).

In addition, the detailed regulations governing MAOs, although insufficient on their own, further underscore that MAOs are under CMS's "subjection, guidance, and control." Significantly, pursuant to the regulations, MAOs make determinations that are directly subject to administrative review by CMS. Although MAOs have internal procedures for providers seeking determinations, many of those decisions are subject to review through administrative appeals. 42 C.F.R. §§ 422.566, 422.578, 422.600, 422.608. That CMS

---

[5] In reaching a contrary conclusion, the Sixth Circuit reasoned that MAOs perform a discrete function by administering MA plans that the government would not otherwise maintain. <u>Ohio State Chiropractic</u>, 647 Fed. App'x at 623-24. The Court finds this an inappropriately narrow view, as the inquiry should focus on whether CMS would have to administer <u>any</u> benefits in the absence of MAOs.

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFF'S MOTION TO REMAND [DKT. NO. 9]**

reviews Humana's determinations concerning entitlement to benefits evinces an "unusually close" relationship between the two. See Watson, 551 U.S. at 153. Therefore, in this Court's opinion, Humana has satisfied the "acting under" requirement of the federal officer removal statute.

**2.   Causal Nexus**

Body & Mind also contests that Humana satisfies the final requirement of § 1442(a)(1), a "causal nexus" (Dkt. No. 9-1 at 4). This is a low standard under which the defendant must "demonstrate that the acts for which [it is] being sued . . . occurred because of what [it was] asked to do by the Government." In other words, it must "establish that the act that is the subject of the Plaintiff's attack . . . occurred while [the] Defendant[] [was] performing [its] official duties." Isaacson v. Dow Chem. Co., 517 F.3d 129, 137-38 (2d Cir. 2008). Further, the Removal Clarification Act of 2011 added "or relating to" in the requirement that the act complained of be "for or relating to any act under color of office," broadening the causal scope. See Ohio State Chiropractic, 647 Fed. App'x at 624. A defendant therefore need not show that the challenged action was the action under federal control.  What it must show is "(1) that [it] conducted some activity under the

direct and detailed control of a federal officer, and (2) that because of that activity or in the course of performing that activity," it committed the act alleged by the plaintiff. <u>Carter</u>, 635 F. Supp. 2d at 489.

The Court concludes that Humana's alleged refusal to pay Body & Mind is an act sufficiently related to its actions under CMS. <u>Prime Healthcare</u>, 2016 WL 5745130; <u>Beaumont Foot Specialists</u>, 2015 WL 9257026, at *4; <u>but see</u> <u>Woodruff</u>, 65 F. Supp. 3d at 591; <u>Ohio State Chiropractic</u>, 647 Fed. App'x at 624-25. Whether Humana properly paid Body & Mind or used CMS mandated procedure codes, those acts took place "because of . . . or in the course of performing" what it was asked to do by the government – pay healthcare providers for services rendered to beneficiaries of its MA plans. This is enough to clear the low hurdle of causation. <u>See</u> <u>Smith v. Collection Tech., Inc.</u>, No. 2:15-cv-06816, 2016 WL 1169529 (S.D.W. Va. Mar. 22, 2016).

## IV. CONCLUSION

For the reasons discussed, Humana is entitled to take advantage of the federal officer removal statute in this case. 28 U.S.C. § 1442(a)(1). Therefore, the Court **DENIES** Body & Mind's motion to remand (Dkt. No. 9).

**MEMORANDUM OPINION AND ORDER DENYING**
**PLAINTIFF'S MOTION TO REMAND [DKT. NO. 9]**

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Order to counsel of record.

DATED: February 16, 2017.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE
